STATE OF CONNECTICUT : **FILED**

: ss: New Haven, Connecticut   MAR 12 A 10:00

COUNTY OF NEW HAVEN : January 31, 2012   U.S. DISTRICT COURT
NEW HAVEN, CT.

3:18mj395-JGM

## SEARCH WARRANT AFFIDAVIT

I, Lynn E. Allen, being duly sworn, state as follows:

1. I am a Special Agent of the U.S. Department of Labor, Office of Inspector General (DOL-OIG), and have been so employed since December 2003. Prior to joining DOL-OIG, I was a Special Agent with the U.S. Department of Agriculture, Office of Inspector General, for 6 years. My duties as a Special Agent include investigating violations of federal law, and more specifically as it pertains to this investigation, violations of Title 18, United States Code, Sections 1341, 1343, and 1033. While being trained as a Special Agent, I received basic investigative training on conducting fraud investigations at the Federal Law Enforcement Training Center in Georgia. I also received instruction on probable cause as it relates to search and seizure warrants, and the methods of executing such warrants. Additionally, in June 2007, I attended training on the criminal enforcement of violations of the Employee Retirement Income Security Act of 1974 (ERISA), which discussed fraud schemes involving employee benefit plans and Multiple Employer Welfare Arrangements (MEWA). I have assisted in the execution of numerous search warrants of personal residences and businesses for records relevant to ongoing fraud investigations. Through my training and experience as a Special Agent, I have become familiar with the manner in which individuals and entities prepare and maintain both personal and business records. I am currently assigned to the Meriden Field Office as a Senior Special Agent. I am the case agent that has directed the investigation that is the subject of this Affidavit,

in conjunction with an Investigator from U.S. Department of Labor, Employee Benefits Security Administration. I have participated fully in this investigation and, as a result of this participation, as well as the information provided by other investigators, I am thoroughly familiar with the information contained herein.

2. On May 25, 2011, this Court authorized several warrants to search for evidence, fruits, and instrumentalities of violations of wire fraud, 18 U.S.C. Section 1343; mail fraud, 18 U.S.C. Section 1341; and insurance fraud, 18 U.S.C. Section 1033 ("the May 25 warrants"). Those warrants authorized the searches of, respectively, (a) the entire premises of the office property located at 300 First Stamford Place, #201, Stamford, Connecticut ("SUBJECT OFFICE A"), which includes the sales and marketing business offices of Benistar Admin Services, Inc. ("BASI"), and other associated businesses; (b) the entire premises of the office property located at 100 Grist Mill Road, Simsbury, Connecticut, ("SUBJECT OFFICE B"), which includes the main business offices of BASI, Charter Oak Trust, Charter Oak Trust 2009, Grist Mill Capital, LLC, Avon Capital, LLC, Nova Group, Inc, TPG Group, Inc., and other associated businesses; (c) the entire premises of the office property located at 1055 Washington Boulevard, 8th Floor, Stamford, Connecticut, with entrance designated by the name "Caldwell Funding Corporation," ("SUBJECT OFFICE C"), which includes the offices of Caldwell Life Strategies, an entity associated with Ridgewood Finance II, LLC, the successor in interest of Ridgewood Finance, Inc.; and (d) forensic images (copies) of certain computer drives and media ("IRS SEIZED MEDIA") that were previously seized pursuant to a search warrant for SUBJECT OFFICE B on April 20, 2010, and which were then held by the Internal Revenue Service-Criminal Investigative Division (IRS-CID) at 150 Court Street, Room 314, New Haven, Connecticut, more specifically described as follows:

a. RAID ARRAY in a Dell Power Edge 2600, with Serial Number 722PB51, IRS Control Number B71

b. RAID ARRAY in a Dell Server, with Serial Number 7YTNQB1, IRS Control Number B72

c. Dell D600 Laptop Computer, Seized from Cube Number 38, IRS Control Number B73

d. Dell D800 Laptop Computer, Service Tag 1FRKG61, IRS Control Number B74

e. Dell D610 Laptop Computer, Service Tag DQ21981, IRS Control Number B75

f. USB Thumb Drive, Seized from Cube 33, IRS Control Number B76

g. Adaptec External Drive, IRS Control Number B77

h. Hard Disk Drive in Dell Optiplex Computer, Seized from Daniel Carpenter's Office, Service Tag GG7Z551, IRS Control Number B78

i. Hard Disk Drive in Dell Latitude Computer, Seized from Daniel Carpenter's Office, Service Tag HF95K11, IRS Control Number B79

j. Dell Optiplex Desktop Computer Model GX520, Seized from Molly Carpenter's Office, Service Tag 424PL91, IRS Control Number B80

k. Dell Latitude D830 Computer, Seized from Cube 34, IRS Control Number B81

l. Generic computer drive in an Antec Box labeled "Benistar 508", IRS Control Number B82

m. Dell Latitude 630 Computer, IRS Control Number B83

3. The affidavit supporting the May 25 warrants (hereinafter "the May 25 affidavit") is incorporated as though fully set forth herein. The items authorized to be seized were set forth in Attachment D to the May 25 affidavit.

4. On May 26, 2011, during the execution of the May 25 warrants to search SUBJECT OFFICE A, SUBJECT OFFICE B, and SUBJECT OFFICE C (collectively, "the SUBJECT OFFICES"), investigators discovered denied insurance applications related to Charter Oak Trust in SUBJECT OFFICE A, and un-submitted insurance applications in SUBJECT OFFICE B. As a result, this Court issued additional search warrants for the SUBJECT OFFICES for unsubmitted and/or denied insurance applications (the "May 26 warrants"). The affidavit supporting the May 26 warrants (the "May 26 affidavit") is incorporated as though fully set forth herein. The items authorized to be seized were set forth in Attachment D to the May 26 affidavit.

5. Pursuant to the May 25 and 26 warrants, exact copies, or "clones," were made of the IRS SEIZED MEDIA (the "IRS IMAGE COPIES"). The IRS IMAGE COPIES are now being maintained at the Connecticut offices of the United States Department of Labor, located at 530 Preston Avenue, Suite 250, Meriden, Connecticut (the "DOL CONNECTICUT OFFICE"). Working copies of the IRS IMAGE COPIES, which are also exact duplicates of the IRS SEIZED MEDIA, were created and will likely be the copies on which the requested searches are conducted, so as to preserve the original evidence. Those working copies are being held at the United States Department of Labor Computer Forensic Laboratory, located at 200 Sheffield Street, Suite 309, Mountainside, New Jersey (the "DOL COMPUTER LAB").

6. The execution of the May 25 and May 26 warrants for the SUBJECT OFFICES also yielded forensic images (the "ADDITIONAL FORENSIC IMAGES") of additional digital

media, primarily in the form of computers, computer storage drives, and servers (collectively, the "ADDITIONAL SEIZED MEDIA"). Some of the ADDITIONAL FORENSIC IMAGES were made at the locations of the warrant executions, and some were made in a forensic laboratory. Some of ADDITIONAL SEIZED MEDIA that were forensically imaged were located in SUBJECT OFFICE A, as follows:

a. A 2 Gigabyte USB Thumb Drive seized from Donald Trudeau's desk

b. Dell Latitude D430 computer, Serial No. BV3PGG1

c. Dell Latitude D610 computer, Serial No. CY31981

d. External Hard Disk Drive, identified by "Lacie"

e. HP TOMG computer, Serial No. MXL02206XG

f. Dell Latitude D630 computer, Serial No. 40PNSF1

g. Dell Latitude D800 computer, Serial No. 4NF7W41

h. Dell Latitude D630 computer, Serial No. 8G7ZBF1

i. Dell Optiplex 380 computer, Serial No. 3FZPNL1

j. Dell Latitude E6510 computer, Serial No. JNTX0P1

k. Dell Optiplex GX270 computer, Serial No. G6N4J41

l. Dell Optiplex 745 computer, Serial No. D5PB5D1

m. HP mini 1000 computer, Serial No. CNU91514X5

n. QNAP computer server, Serial No. Q09BB00737

o. Dell Optiplex 760 computer, Serial No. 2TN6TJ1

p. Sandisk Thumbdrive, Serial No. BH0907NVPB

q. Dell Dimension 4600 computer, Serial No. WCAJ94070415

r. Dell Optiplex 755 computer, Serial No. 9JNNDH1

  s. Dell Dimension 3000 computer, Serial No. 6LH4N81

  t. Compaq 6000 computer

  u. HP NV507UT #ABA computer, Serial No. MXL02206XH

  v. Dell PowerEdge 2800 computer server, Serial No. CQK4K71

7. Some of the ADDITIONAL SEIZED MEDIA that were forensically imaged were located in SUBJECT OFFICE B, as follows:

  a. Dell Optiplex 745 Computer, Serial No. FQ46LC1

  b. Dell Optiplex GX280 Computer, Serial No. GG7ZS51

  c. Dell Optiplex 745 Computer, Serial No. CQ46LC1

  d. Dell Optiplex GX520 Computer, Serial No. 9KW10B1

  e. IBM Clone Computer

  f. Dell Latitude E4310 Computer, Serial No. HBXY3Q1

  g. Dell Optiplex GX520 Computer, Serial No. 4DJF691

  h. Dell Server PE 2900, Serial No. 7YTNQB1

  i. Dell Power Edge 2600 server, Serial No. 722PB51

  j. Dell Power Edge T610 server, Serial No. CBWWSK1

  k. Sandisk 16GB memory card, Serial No. SDCZ40-016G

  l. Dell Optiplex GX520 computer, Serial No. 424PL91

8. Some of the ADDITONAL SEIZED MEDIA that were forensically imaged were located in SUBJECT OFFICE C, as follows:

  a. Lenovo X200s laptop computer, Serial No. R9-03L2R, labeled CFC-CT-LAP011

  b.  Western Digital External Hard Drive, Serial No. WXE409SW1772, labeled R1 External

  c.  Lenovo X201 laptop computer, Serial No. R9-46TKA, labeled CFC-CT-LAP013

  d.  A desktop computer, Serial No. 2UA63811CT

  e.  The disk1 partition of a server labeled CFC-CT-FILE02

  f.  The disk1 partition of a server labeled CFC-CT-MAIL01

  g.  The disk1 partition of a server labeled CLS-CT-MAIL01

  h.  The disk1 partition of server labeled RWF-CT-MAIL01

  i.  A compact disc labeled "email archive," found in Veronica Cranny's office

9. The ADDITIONAL FORENSIC IMAGES are currently being maintained at the DOL COMPUTER LAB in Mountainside, New Jersey. As above, working copies of each image have been or will be created on which the requested searches will be conducted, so as not to disturb the original images.

10. Besides the ADDITIONAL FORENSIC IMAGES, the execution of the May 25 and 26 warrants at the SUBJECT OFFICES yielded numerous hard copy documents and other items (the "hard copy items").

11. The May 25 and 26 affidavits identify Daniel Carpenter, Wayne Bursey, J. Edward Waesche, Jack E. Robinson, Charles Induddi Westcott, Robert Pacini, Andrew Varner, Paul E. Martin, Donald Trudeau, and others known and unknown, as "targets." Subsequent to the issuance and execution of the May 25 and 26 warrants, certain targets' attorneys have claimed that within the seized materials and media, there exist a number of items that are

7

protected by the attorney-client privilege and thus should not be accessed by the Government (the "litigating targets"). These litigating targets are related in some way to SUBJECT OFFICE A and SUBJECT OFFICE B, and have made privilege claims over the hard copy documents seized from those locations, the ADDITIONAL FORENSIC IMAGES seized from SUBJECT OFFICE A and SUBJECT OFFICE B, as well as the IRS SEIZED MEDIA. These claims are currently being litigated before the Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, under docket number 3:11MC210(MRK). The litigating targets' attorneys have separated out those hard-copy documents for which they claim a privilege, but have contested the Government's right to use a "filter team" to assist in resolving those claims. As a result, no electronically stored information ("ESI") has been reviewed, and claims over hard-copy documents are unresolved. On December 22, 2011, in a conference call with the targets' attorneys, Judge Kravitz, and the Government, the targets agreed to winnow further the number of hard copy documents for which they claim a privilege, and then submit a privilege log and the documents at issue to Judge Kravitz by January 18, 2012 (this deadline has not been met). Moreover, on December 27, 2011, Judge Kravitz issued an order permitting the use of a filter team and setting procedures for review of ESI contained in the seized media (the "DECEMBER 27 ESI ORDER").

12. As to material, both in the form of ADDITIONAL FORENSIC IMAGES and the hard copy items seized from SUBJECT OFFICE C, the United States had conversations with an attorney representing the organizations with control of SUBJECT OFFICE C (the "SUBJECT OFFICE C attorney"). The United States is working with the SUBJECT OFFICE C attorney to reach an agreed-upon protocol for handling claims of privilege, and will ensure that any items seized pursuant to this affidavit and these warrants will be handled consistent with any

8

agreement reached with the SUBJECT OFFICE C attorney or any order from the United States District Court.

13. All of the original hard copy items seized during the execution of the May 25 and 26 warrants are currently being held at the DOL CONNECTICUT OFFICE.

14. On their faces, Attachment D to the May 25 warrant and Attachment D to the May 26 warrant limit the time period of responsive material to "the period of 2006 through the present." As was set out more fully in the affidavit in support of the May 25 warrant, this time period was deemed appropriate in large part because your affiant had located Declarations of Trust for Charter Oak Trust that indicated its formation in October 2006. Your affiant located no insurance policies that were purchased under the Charter Oak Trust prior to that time. Moreover, again as was set out in the May 25 affidavit, the line of credit for the Charter Oak Trust, secured from Ridgewood Finance Inc., was not set up until in or about November 2006.

15. However, in an initial review of the hard copy items seized during the execution of the May 25 and 26 warrants, concerning which the targets' attorneys have not claimed a privilege, your affiant discovered the following three sets of documents from SUBJECT OFFICE A:

    a. A set of documents concerning the Charter Oak Trust which at the bottom of each page read "COPYRIGHT © 2004 NOVA BENEFIT PLANS, LLC. ALL RIGHTS RESERVED. REV. 6/01/04." The documents were forms and instructions related to signing up a participant in the Charter Oak Trust, including: an Enrollment Checklist, an Adoption Agreement, an Election of Participation and Beneficiary Designation Form, a Disclosure and Acknowledgement Statement, an Administration Fee Agreement, a

LA

Certificate of Resolution, and a Broker/Insurance Carrier General Information Form. Each page had the name "Charter Oak Trust" and a logo in the upper left corner.

  b. A trust agreement for the Charter Oak Trust dated July 1, 2004, every page of which, at the bottom, reads "COPYRIGHT © 2004 NOVA BENEFIT PLANS, LLC. ALL RIGHTS RESERVED. REV. 7/01/04."

  c. An opinion letter from Attorney John Reid III from Edwards and Angell, LLP, dated August 23, 2004, to NOVA Benefit Plans, LLC, concerning the applicability of Internal Revenue Code Section 419A(f)(6) to the Charter Oak Trust. The letter indicates that it is responding to a request from NOVA.

16. Based on a review of these three sets of documents, there is probable cause to believe, and your affiant does believe, that there exists both within the hard copy items seized on May 26 from the SUBJECT OFFICES, as well as from the IRS IMAGE COPIES (and all copies thereof) and the ADDITIONAL FORENSIC IMAGES (and all copies thereof), material responsive to the May 25 and 26 warrants which was created, dated, or otherwise reflects a date prior to the 2006. Therefore, your affiant requests authorization to seize the items in Attachment A to this warrant, which sets the time frame for responsive documents at 2003 to the present, as opposed to 2006 to the present (as was in the May 25 Attachment D and May 26 Attachment D).

17. Your affiant has also learned through review of non-privileged documents seized pursuant to the May 25 and May 26 warrants, as well as through grand jury investigation, that certain individuals insured through the Charter Oak Trust or Charter Oak Trust 2009 have in the past purchased insurance policies that have subsequently been sold or offered for sale. For example, a Charter Oak Trust insured with initials "M.C." had previously sold an insurance policy to a different entity associated with the targets (Avon Capital LLC) for $72,000.

Therefore, your affiant is also requesting to search for evidence related to insurance policies bought or sold by individuals who participated in or who otherwise were insured under Charter Oak Trust and/or Charter Oak Trust 2009. This request has also been incorporated into Attachment A as request "m-2". Attachment A also includes request "l-1," which was not included in the original Attachment D; however, your affiant believes that there is probable cause set out in the May 25 and May 26 affidavit, and herein, in support of request l-1, which concerns funding from Ridgewood Finance Inc. and Ridgewood Finance II. Other small changes in Attachment A include the addition of "Charter Oak Trust 2009" to request "f," the language "and/or beneficiary" in request "i," and the language "without limitation" to requests "m" and "n."

18.   Your affiant is therefore requesting to search for the items in Attachment A in the following locations: (1) the hard copy documents currently in possession of the United States Department of Labor at the DOL CONNECTICUT OFFICE, which were seized pursuant to the May 25 and May 26 warrants; (2) copies of the IRS SEIZED MEDIA; and (3) copies of the ADDITIONAL SEIZED MEDIA.

19.   Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested search warrants, it does not include all information gathered to date by the DOL-OIG in relation to this investigation. Rather, it contains information that I believe establishes probable cause to believe that evidence, instrumentalities and fruits of federal criminal violations committed by the TARGETS (as set out in the May 25 and 26 affidavit) are located at the DOL CONNECTICUT OFFICE, in the IRS IMAGES COPIES, and in the ADDITIONAL FORENSIC IMAGES.

20.     Based on the facts described in the May 25 affidavit, the May 26 affidavit, and herein, there is probable cause to believe that:

    a.      The TARGETS caused the U.S. Mail to be used in furtherance of a scheme to defraud insurance companies, including but not limited to the submission of false insurance applications, in violation of 18 U.S.C. Section 1341;

    b.      The TARGETS caused the use of interstate wires in furtherance of the same scheme to defraud insurance companies, including but not limited to the use of email in the submission of false information in support of fraudulent insurance applications, in violation of 18 U.S.C. Section 1343;

    c.      The TARGETS have caused the submission of false insurance applications to insurance companies by misrepresenting pertinent information on the applications, in violation of 18 U.S.C. Section 1033; and

    d.      The items sought in Attachment A will be found at the DOL CONNECTICUT OFFICE, the IRS IMAGE COPIES (and copies thereof), and the ADDITIONAL FORENSIC IMAGES (and copies thereof).

21.     The analysis of electronically stored data may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying the file directories and any individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); conducting a file-by-file review of the data; examining all the structured, unstructured, deleted, and free space data on a particular piece of media; opening or reading the first few pages of each file in order to determine their precise contents; scanning storage areas to discover and possibly recover deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

The forensic analysis of the electronic information seized during the search can take weeks or months, depending on the volume of data stored in the computers.

22. As was noted above, the United States Government and some of the targets are currently litigating claims of privilege over all of the material seized pursuant to the May 25 and May 26 warrants. Your affiant understand that those claims of privilege will be extended to any additional material seized as a result of the warrants requested herein, and proposes that those claims of privilege be adjudicated according to the DECEMBER 27 ESI ORDER, as well as any subsequent order from the United States District or Magistrate Court and/or stipulation between the Government and the targets who have asserted a privilege.

## NEED FOR SEALING

23. I request that the search warrant applications and this affidavit be sealed. The investigation of the criminal activities of Daniel Carpenter, Jack E. Robinson, Donald Trudeau, J. Edward Waesche, Wayne Bursey, Charles Induddi Westcott, Robert Pacini, Andrew Varner, Paul E. Martin, and others known and unknown, is ongoing. Premature disclosure of the contents of this affidavit could result in the destruction of evidence, and could frustrate this investigation by alerting the targets of the investigation to the nature of the probe, the techniques employed, and the evidence developed to date, and by limiting the possible use of the grand jury to develop further admissible evidence and by limiting the ability to conduct other search warrants that may be necessary.

## CONCLUSION

24. There is probable cause to believe, and I do believe, that during the years 2003 through the present, Carpenter, Bursey, Robinson, Waesche, Pacini, Martin, Varner, Westcott and Trudeau, and others known and unknown, willfully conducted a fraud scheme to

LA

fraudulently obtain life insurance policies, and used interstate wires and mail to fraudulently obtain the policies, in violation of 18 U.S.C. §§ 1033, 1341 and 1343.

25. There is probable cause to believe, and I do believe, that the items described in Attachment A to this Affidavit are presently located inside the offices of the Connecticut Offices of the United States Department of Labor, located at 530 Preston Avenue, Suite 250, Meriden, Connecticut, specifically within material previously seized on or about May 26, 2011, from the SUBJECT OFFICES, and that such items constitute evidence, fruits and/or instrumentalities of violation so 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1033 (insurance fraud).

26. There is probable cause to believe, and I do believe, that the items described in Attachment A to this Affidavit are presently located in the IRS IMAGE COPIES (and all copies thereof), and that such items constitute evidence, fruits and/or instrumentalities of violation so 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1033 (insurance fraud).

27. There is probable cause to believe, and I do believe, that the items described in Attachment A to this Affidavit are presently located in the ADDITIONAL FORENSIC IMAGES (and all copies thereof), and that such items constitute evidence, fruits and/or instrumentalities of violation so 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1033 (insurance fraud).

_____
Lynn E. Allen
Special Agent
U.S. Department of Labor,
Office of Inspector General

Sworn to before me this 31st day of January 2012.

_____
/s/
HON. JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## DESCRIPTION OF ITEMS TO BE SEIZED

For the period of 2003 through the present, all of the following items or records, whether in paper, electronic or other form, relating to Daniel Carpenter, Jack E. Robinson, Donald Trudeau, J. Edward Waesche, Wayne Bursey, Charles Induddi Westcott, Robert Pacini, Andrew Varner, Paul E. Martin, Grist Mill Capital, LLC, Grist Mill Holdings, LLC, Benefit Plan Advisors, LLC, TPG Group, Inc., Caroline Financial Group, Nova Group, Avon Capital, LLC, the Charter Oak Trust Welfare Benefit Plan, the Charter Oak Trust, and the Charter Oak Trust 2009:

a. All books and records, including all general ledgers, cash receipts journals, cash disbursement journals, petty cash journals, bank statements, passbooks, cancelled checks, check stubs or registers, deposit tickets, deposit receipts, cashier's checks, money orders, wire transfer documents, invoices, written estimates, receipts, billing statements, contracts, agreements, customer ledger cards, purchases journals, advance payment ledgers, accounts payable ledgers, accounts receivable ledgers, correspondence, memoranda and documents;

b. any and all IRS forms and/or U.S. Treasury forms to include Annual Return/Report of Employee Benefit Plan Form 5500, Federal income tax returns, partnership returns, payroll tax returns, Forms W-2, and Forms 1099;

c. copies of federal and state income tax returns, including amended federal and state tax returns, as well as any and all records used in, or resulting from, the preparation of federal and state income tax returns;

d. records of income and expenses, such as profit and loss statements, financial statements, balance sheets and income and expense journals;

e. records involving payments from employers, or from any source, into the Charter Oak Trust and/or Charter Oak Trust 2009;

f. records associated with all insurance policies that were owned at any time by the Charter Oak Trust and/or Charter Oak Trust 2009, whether or not they were subsequently transferred;

g. records involving loans, lines of credit, payments, settlement agreements or any financial transactions from Ridgewood Finance, Inc. and/or Ridgewood Finance II, LLC to any of the above entities or related businesses;

h. correspondence between Waesche, Robinson, Carpenter, Bursey, Westcott, Pacini, and/or Trudeau and/or any other business entities or individuals regarding all payments, debts, withdrawals, loans, new policies, transfers of policies, or other activity

15

involving the Charter Oak Trust or Charter Oak Trust 2009 (whether in paper or electronic format and stored on any computers or computer networks or servers), such as letters, memoranda, emails, mailings, and envelopes;

i. all records in whatever form of transfers of ownership and/or beneficiary of insurance policies;

j. bank records, including but not limited to cancelled checks, cashier's checks, money orders, statements, deposit tickets, and withdrawal;

k. bank loan records, including but not limited to loan applications and loan agreements, notes, certificates of deposit, payment records, mortgage statements, mortgage applications, broker accounts, notes receivable, notes payable, stock certificates, account statements, interest and dividend reports, and account activity reports;

l. documents regarding debts owed and monies due from any of the above-mentioned entities or persons, including bills, foreclosure notices, and past due statements;

l-1. documents and records concerning the source of funds used to make payments associated with the Charter Oak Trust and/or Charter Oak Trust 2009, without limitation, including documents and records concerning the source of any line of credit or other funding provided by Ridgewood Finance Inc. and/or Ridgewood Finance II;

m. documents and records relating to Charter Oak Trust's relationship with any of the above-mentioned entities or persons, without limitation, including Trust Agreements, Plan Documents, Adoption Agreements, Insurance Policies, Invoices, Payments, Commission Reports, Loan requests, Contracts, and Complaints;

m-1. All insurance applications without limitation, whether accepted by, pending with, or denied by an insurance company or companies, as well as any insurance application that has been prepared but not submitted, and any documents, records, or other items, whether in electronic or paper form, used in the preparation or negotiation of all such applications;

m-2. All documents and records, without limitation, related to insurance policies bought, applied for, and/or sold, by any individual who also bought, applied for, or had his/her life insured under the Charter Oak Trust or Charter Oak Trust 2009;

n. documents and records relating to Charter Oak Trust 2009's relationship with any of the above-mentioned entities or persons, without limitation, including Trust Agreements, Plan Documents, Adoption Agreements, Insurance Policies, Invoices, Payments, Commission Reports, Loan requests, Contracts, and Complaints;

o.  records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries and reference materials;

p.  records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use;

q.  In order to search for the items described above that may be maintained in electronic media, law enforcement personnel are authorized to search, copy, image and seize the following items for off-site review:

   i.  Any computer equipment and storage device capable of being used to commit further, or store evidence of the offenses listed above;
   ii. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices and optical scanners;
   iii. Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;
   iv. Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;
   v.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;
   vi. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data;
   vii. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and
   viii. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software and router configuration software.

NOTE: As used above, the terms records, documents, programs, applications or materials include records, documents, programs, applications or materials created, modified or stored in any form, including electronic media.